**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BING HONG LI,<br>Plaintiff,<br>v.<br>U.S. DEPARTMENT OF STATE,<br>Defendant. | ) | Civil Action No. 25-2906 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Bing Hong Li—proceeding pro se—brings this civil action against the defendant, the United States Department of State, pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, seeking to compel production of records in response to one FOIA request seeking documents relating to several of his child's passport applications and adjudications, see Complaint for Injunctive and Declaratory Relief Under the Freedom of Information Act, 5 U.S.C. § 552 ("Compl.") at 1, ECF No. 1. Currently pending before the Court are the parties' cross-motions for summary judgment. See generally Motion for Summary Judgment and Memorandum in Support Thereof ("Def.'s Mot."), ECF No. 16; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 18. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Statement of Material Facts ("Def.'s Facts"), ECF No. 16-1; (2) the Declaration of Susan C. Weetman ("Weetman Decl."), ECF No. 16-2; (3) the Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Material Facts ("Pl.'s Facts"), ECF No. 18-1; (4) the Declaration of Bing Hong Li in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Pl.'s Decl."), ECF No. 18-2, and its accompanying exhibits; (5) the Defendant's Reply in Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for

(continued . . .)

must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.

## I. BACKGROUND

### A. Factual and Procedural Background

The following facts are undisputed. In July 2023, the plaintiff submitted to the Department the single FOIA request at issue in this case, "request[ing that] the U.S. Department of State Records Review and Release Division provide the documents that [the plaintiff's] ex-wife submitted to [the] U.S. Consulate General Guangzhou for renewing [the plaintiff's child's] passport in 2012 and 2017." Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2; see also Notice of Filing of FOIA Request at 2, ECF No. 12 (FOIA Request). "The request provided the name of his child, his date of birth, and his passport number." Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2. "In August 2023, the Department wrote [to the p]laintiff to request that he submit a notarized request or a request signed under penalty of perjury[,]" and "[i]n September 2023, [the plaintiff] submitted a notarized version of his request, which the Department acknowledged later that month." Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3.

The plaintiff's FOIA request was routed through the Department's Directorate of Passport Services in the Bureau of Consular Affairs ("CA/PPT"), which is responsible for maintaining the Department's Passport Information Electronic Records System ("PIERS")—a "repository of images of passport applications and associated documents from 1994 to the present." Def.'s Facts ¶ 9; Pl.'s Facts ¶ 9. In response to the plaintiff's FOIA request, "an

(. . . continued)
Summary Judgment ("Def.'s Opp'n"), ECF No. 21; (6) the Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s Resp. to Pl.'s Facts"), ECF No. 21-2; and (7) the Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 22.

analyst in CA/PPT's Office of Records Management searched PIERS for records responsive to [the p]laintiff's request . . . . utiliz[ing] information provided in [his] request—including [his] son's name, date of birth, and passport number—to identify responsive records." Def.'s Facts ¶ 10; see Pl.'s Facts ¶ 10 (admitting in relevant part).

"In December 2023, the Department informed [the p]laintiff that the Department's search located three records responsive to his request." Def.'s Facts ¶ 4; see Pl.'s Facts ¶ 4 (admitting in relevant part). Specifically, the Department released to the plaintiff "passport applications submitted in 2008, 2012, and 2017[,]" subject to the Department's redaction of "personally identifying information of [the p]laintiff's child's mother and information identifying the adjudicating officers[,]" Def.'s Facts ¶ 4; Pl.'s Facts ¶ 4, pursuant to FOIA Exemption 6, see Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7.

Unhappy with the Department's response, the plaintiff filed an administrative appeal in February 2024, based on "his belief that his child's mother had submitted additional documents in connection with the [released] passport applications." Def.'s Facts ¶ 5; Pl.'s Facts ¶ 5. In September 2024, upon review of the plaintiff's administrative appeal, "the Department informed [the p]laintiff that his case had been remanded for further processing." Def.'s Facts ¶ 5; Pl.'s Facts ¶ 5. Specifically,

> [i]n response to [the p]laintiff's request and his administrative appeal, an American Services Staff member in the Near East, South and Central Asia Division of the [Bureau of Consular Affairs' Office of Overseas Citizens Services ('CA/OCS')], who was knowledgeable of both the FOIA request and CA/OCS's record systems, worked with staff at the U.S. Consulate General in Guangzhou to conduct a search of the consulate's files using the information provided in [the p]laintiff's request.

Def.'s Facts ¶ 12; see Pl.'s Facts ¶ 12 (admitting in relevant part). Additionally, another staff member in that same division, "who was [also] knowledgeable of both the FOIA request and

CA/OCS's record systems, [ ] conducted a search of CA/OCS files using search terms reasonably likely to return records responsive to the subject FOIA request." Def.'s Facts ¶ 13; see Pl.'s Facts ¶ 13 (admitting in relevant part).

Also "[i]n September 2024, the Department informed the [p]laintiff that it had identified two records comprising 17 pages responsive to his request[,]" and released those documents to the plaintiff, again subject to the Department's redaction of "personally identifying information of [the p]laintiff's child's mother and information identifying the adjudicating officers . . . ." Def.'s Facts ¶ 6; Pl.'s Facts ¶ 6. The defendant represents that "[n]o records or pages responsive to [the p]laintiff's request were withheld in full." Def.'s Facts ¶ 8. But see Pl.'s Facts ¶ 8 (disputing this representation and disputing the defendant's "assertion that the only withholdings consisted of the redactions identified" by the defendant).[2]

Still unsatisfied with the Department's response to his FOIA request, the plaintiff filed his Complaint in this case on August 27, 2025. See Compl. at 1. On May 29, 2026, the defendant filed its motion for summary judgment, see Def.'s Mot. at 1, and on June 12, 2026, the plaintiff filed his combined cross-motion for summary judgment and opposition to the defendant's motion, see Pl.'s Mot. at 1. On July 15, 2026, the defendant filed its combined reply in support of its motion and opposition to the plaintiff's cross-motion, see Def.'s Opp'n at 1, followed by the filing of the plaintiff's reply in support of his cross-motion on July 30, 2026, see Pl.'s Reply at 1.

[2] The plaintiff also makes several other representations about subsequent communications with the defendant, see Pl.'s Facts ¶¶ 15–19, but these facts are immaterial to the issues in this case, as explained in more detail below, see infra Sec. III.A. Therefore, the Court need not address these representations for the purposes of determining the facts that are in dispute, see Secs. & Exch. Comm'n v. Grendys, 840 F. Supp. 2d 36, 40 (D.D.C. 2012) ("In the end, if a 'fact' is . . . immaterial to the case at hand, the Court will simply ignore it.").

## II. STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted). The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly."). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"). Moreover, the defendant's burden "cannot be met by mere conclusory statements." Wash. Post Co., 863 F.2d at 101 (citation omitted). "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the Act seeks to guard against," Wash. Post Co., 863 F.2d at 101 (citation omitted).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most

favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)). However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

In 2016, Congress amended the FOIA to add a "foreseeable harm" requirement, which allows withholding of information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, 'pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest' and if the law does not prohibit the disclosure." Jud. Watch, Inc. v. U.S. Dep't of Com., 375 F. Supp. 3d 93, 98 (D.D.C. 2019) (quoting Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 72 (D.D.C. 2018)).

## III. ANALYSIS

The defendant argues that it is entitled to summary judgment because it "conducted a diligent and reasonable search and has already located and produced the records sought by

[the p]laintiff[,]" subject only to "targeted redactions of personal information, [which] are warranted to protect personal privacy and no records (or pages) were withheld in full." Def.'s Mot. at 3. The plaintiff argues in response that the defendant is not entitled to summary judgment because: (1) the defendant has failed to "identify the actual search dates, the cut-off date applied, the specific search terms used . . . , or how the Guangzhou search was conducted[,]" Pl.'s Mot. at 2; and (2) "[t]he record before the Court shows that additional passport-related activity existed beyond the records described in the Department's initial production[,]" including documents from 2022 and 2023, id. Further, the plaintiff argues that "on February 2, 2026, the Department itself identified additional passport-related records concerning [the p]laintiff's son, including a 2022 unissued passport application and a 2023 passport application[,]" id. at 3, which the plaintiff argues "raises substantial questions about the adequacy, scope, and completeness of the searches described" by the defendant, id. Finally, the plaintiff appears to also argue that the defendant is not entitled to summary judgment as to its redactions of personal information or its segregation of non-exempt information because it has offered an insufficiently detailed explanation as to each withholding and segregability. Id. at 6.

The Court will first determine whether the defendant has shown that it is entitled to summary judgment as to the adequacy of its search for responsive records before determining whether it has satisfied its burden of establishing the propriety of its redactions and its efforts to release all segregable non-exempt information.

### A. Whether the Defendant's Search in Response to the Plaintiff's FOIA Request Was Adequate

"To secure summary judgment under [the] FOIA, an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be

reasonably expected to produce the information requested[.]" Reps. Comm. for Freedom of Press v. Fed. Bureau of Ivestigation, 877 F.3d 399, 402 (D.C. Cir. 2017) (internal quotations omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but . . . whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984). "The adequacy of an agency's search for documents requested under [the] FOIA 'is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.'" Montgomery v. Internal Revenue Serv., 514 F. Supp. 3d 125, 131 (D.D.C. 2021) (quoting Weisberg, 745 F.2d at 1485). The agency may meet its burden "by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely contain responsive materials (if such records exist) were searched." Reps. Comm. for Freedom of Press, 877 F.3d at 402 (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). And "[a]bsent contrary evidence, such affidavits or declarations are generally sufficient to show that an agency complied with FOIA." Montgomery, 514 F. Supp. 3d at 131 (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)). "'[S]ummary judgment is inappropriate' if 'a review of the record raises substantial doubt' as to the search's adequacy, 'particularly in view of well defined requests and positive indications of overlooked materials.'" Reps. Comm. for Freedom of Press, 877 F.3d at 402 (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)) (internal quotation marks omitted).

Here, for the following reasons, the Court concludes that the defendant's search in response to the plaintiff's FOIA request was adequate. According to the Weetman Declaration, the Department "determined that the only Department components reasonably likely to maintain responsive records were CA/PPT and CA/OCS." Weetman Decl. ¶ 19. The plaintiff does not

challenge this representation, but asserts that the defendant has failed to identify the search terms used in searching for records responsive to his FOIA request, see Pl.'s Mot. at 5. However, this argument is flawed for several reasons. First, the plaintiff appears to overlook the Weetman Declaration's express representation that both CA/PPT and CA/OCS (along with staff at the U.S. Consulate General in Guangzhou) conducted searches "using the information provided in [the p]laintiff's request—including [his] son's name, date of birth, and passport number." Weetman Decl. ¶¶ 21, 23. Second, although the plaintiff argues that the Weetman Declaration fails to indicate "the actual search dates" or "whether any date limitations were applied[,]" Pl.'s Mot. at 5, the defendant need not describe every facet of its search protocol in detail to meet its burden, but instead need only provide a "reasonably detailed" account of who within the Department conducted the searches, the scope of their searches, and the terms they used in conducting those searches. Reps Comm. for Freedom of Press, 877 F.3d at 402. The Court concludes that the representations in the Weetman Declaration are sufficient to meet this burden.

The plaintiff's dissatisfaction with the defendant's search is also based on his position that the Department's February 2, 2026 identification of "additional passport-related records concerning [the p]laintiff's son, including a 2022 unissued passport application and a 2023 passport application[,]" precludes summary judgment being entered for the defendant. Pl.'s Mot. at 3. However, as the plaintiff himself indicates, the Department's February 2, 2026 search that discovered the additional records was in response "to a separate records request [submitted by the plaintiff] concerning [his] son's passport records." Pl.'s Decl. ¶ 9 (emphasis added). Thus, this additional disclosure does not in any way undermine the adequacy of the defendant's search for records responsive to the plaintiff's FOIA request at issue in this case, which expressly sought documents "submitted to [the] U.S. Consulate General Guangzhou for renewing [the

plaintiff's child's] passport in 2012 and 2017[,]" Notice of Filing of FOIA Request at 2 (emphasis added), and therefore does not encompass records requested from 2022 and 2023. Accordingly, the Court concludes that the search the defendant conducted in response to the plaintiff's FOIA request was adequate.

**B. Whether the Defendant Properly Withheld the Redacted Information Pursuant to FOIA Exemption 6**

Under Exemption 6 of the FOIA, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C. § 552(b)(6). "The 'primary purpose' of Exemption 6 is to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" Human Rts. Def. Ctr. v. U.S. Park Police, 126 F.4th 708, 713 (D.C. Cir. 2025) (quoting U.S. Dep't of State v. Wash. Post. Co., 456 U.S. 595, 599 (1982)). "Exception 6 may apply to entire files or may call for redaction of 'bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy.'" Id. (quoting Jud. Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 152–53 (D.C. Cir. 2006)).

The Court must undertake a two-part inquiry to determine whether Exemption 6 applies. First, the Court must determine "whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest." Id. (quoting Niskanen Ctr. v. Fed Energy Regul. Comm'n, 20 F.4th 787, 791 (D.C. Cir. 2021)). "The government bears the burden of showing that a substantial invasion of privacy will occur if the documents are released[,]" Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (citing Ripskis v. Dep't of Hous. & Urban Dev., 746 F.2d 1, 3 (D.C. Cir. 1984)), and it may satisfy this burden with affidavits "if they contain reasonable specificity of detail rather than conclusory statements, and if they are not called into

question by contradictory evidence in the record or by evidence of agency bad faith[,]" Jud. Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006)).

If the agency satisfies its initial burden, the Court must then "balance the individual's right of privacy against the public interest in disclosure." Niskanen Ctr., 20 F.4th at 791 (quoting Prison Legal News, 787 F.3d at 1147). "[T]he balancing inquiry focuses 'not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld.'" Id. (quoting Schrecker v. U.S. Dep't of Just., 349 F.3d 657, 661 (D.C. Cir. 2003)). And, the only relevant public interest in this analysis is "the extent to which disclosure of the information sought would 'shed light on the agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" U.S. Dep't of Def. v. Fed. Labor Rels. Auth., 510 U.S. 487, 497 (1994) (quoting Reps. Comm. for Freedom of the Press, 489 U.S. at 773). On the other hand, "[w]hen the material in the government's control is a compilation of information about private citizens, rather than a record of government actions, there is little legitimate public interest that would outweigh the invasion of privacy because the information reveals little or nothing about an agency's own conduct." Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Just., 503 F. Supp. 2d 373, 382 (D.D.C. 2007) (citing Reps. Comm. for Freedom of Press, 489 U.S. at 780).

In this case, the Court concludes that the defendant has established that the withheld information is protected from disclosure under FOIA Exemption 6. As indicated previously, the defendants redacted two categories of personal information: (1) information about the mother of the plaintiff's child; and (2) information about the Department's employees who adjudicated the passport applications at issue in this case. See Def.'s Facts ¶ 6; Pl.'s Facts ¶ 6. According to the

Weetman Declaration, the Department concluded that "[r]elease of this identifying information would foreseeably harm these individuals' privacy interests by subjecting them to a potentially high level of harassment and unsolicited attention[,]" because such disclosure "in connection with a contested passport adjudication action would clearly run the risk of harm to their privacy interests." Weetman Decl. ¶ 26. To the extent that the plaintiff responds to these arguments at all, he only faults the Weetman Declaration for "describ[ing] the redactions categorically," instead of "provid[ing] a detailed explanation sufficient to show that each withholding was properly applied . . . ." Pl.'s Mot. at 6. The Court disagrees. The Weetman Declaration adequately describes the specific information it withheld—i.e., personal information about the mother of the plaintiff's child and the officers who adjudicated his son's passport applications at issue in this case—and has provided a declaration that contains "reasonable specificity of detail[,]" Jud. Watch, Inc., 726 F.3d at 215, regarding the "substantial invasion of privacy" that would result from the release of this information, Prison Legal News, 787 F.3d at 1147, considering the fact that the plaintiff is seeking to acquire information regarding his child's mother from the government rather than obtaining that information directly from the child's mother.

In regards to the withholding of information about the plaintiff's son's mother, "[e]ven seemingly innocuous information can be enough to trigger the protections of Exemption 6[,]" Horowitz v. Peace Corps., 428 F. 3d 271, 279 (D.C. Cir. 2005) and this includes "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data" when linked to an individual person, Wash. Post Co., 456 U.S. at 600; see also Toorkey v. U.S. Citizenship and Immigr. Servs., No. 22-cv-1648 (BAH), 2023 WL 6461008 at *5 (D.D.C. Aug. 18, 2026) (holding that FOIA Exemption 6 applied to the plaintiff's request to receive personal

information regarding his ex-wife from the United States Citizenship and Immigration Services). And, regarding the officers who adjudicated the plaintiff's son's passport applications, "civilian federal employees have a right to control information related to themselves and to avoid disclosures that could conceivably subject them to annoyance or harassment . . . ." Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs, 405 F. Supp. 3d 127, 144 (D.D.C. 2019) (internal citations and quotations omitted).

Further, as stated by the defendant, disclosure of the personal information regarding the mother of the plaintiff's child and the defendant employees who adjudicated the case "would shed no light on the operations and activities of the U.S. Government[,]" Weetman Decl. ¶ 26 and thus "there is little legitimate public interest that would outweigh the invasion of privacy[,]" Akin, Gump, Strauss, Hauer & Feld, L.L.P., 503 F. Supp 2d at 382 (citation omitted). Moreover, the plaintiff does not make any argument asserting that there is a public interest in the release of this information, see generally Pl.'s Mot., and the Court sees no public interest justifying the disclosure of this private information. Thus, the Court concludes that the defendant has properly withheld this personal information pursuant to FOIA Exemption 6.[3]

**C. Segregability**

Finally, the Court addresses whether the defendant has provided all reasonably segregable records to the plaintiff that were withheld pursuant to FOIA Exemption 6. Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b); see

[3] Although the plaintiff does not challenge the defendant's assertion of the foreseeable harm that would result from the disclosure of this information, the Court concludes for the same reasons stated above that the defendant has satisfied its independent burden based on its justifications for withholding this information pursuant to FOIA Exemption 6. See 5 U.S.C. § 552(a)(8)(A)(i) (permitting withholding of information "if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" under the FOIA).

also Roth v. U.S. Dep't of Just., 642 F.3d 1161, 1167 (D.C. Cir. 2011) ("[E]ven if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." (alteration in original) (citation omitted)). An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material[,]" Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin., 71 F.4th 1051, 1057–58 (D.C. Cir. 2023) (quoting Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007)), and "[t]o rebut this presumption, the FOIA requester must introduce evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation[,]" Rudometkin v. U.S., 140 F.4th 480, 494 (D.C. Cir. 2025) (quoting Flyers Rts. Educ. Fund, 71 F.4th at 1058). Nonetheless, the Court must "mak[e] an express finding on segregability." Id. (quoting Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 371 (D.C. Cir. 2020)).

Here, as indicated above, the Weetman Declaration represents that the Department concluded that releasing the redacted personal information "would foreseeably harm these individuals' privacy interests by subjecting them to a potentially high level of harassment and unsolicited attention." Weetman Decl. ¶ 26. The Weetman Declaration further represents that "[t]he Department carefully reviewed the documents . . . for reasonable segregation of non-exempt information and implemented segregation where possible[,]" but concluded in certain cases that "no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law." Id. ¶ 28. In response, the plaintiff merely argues in passing that the Weetman Declaration "does not provide a detailed explanation sufficient to show . . . that all reasonably segregable non-exempt information was released." Pl.'s Mot. at 6.

Based on the representations made in the Weetman Declaration, the presumption of compliance afforded to the agency in this case, see Flyers Rts. Educ. Fund, 71 F.4th at 1057, and the plaintiff's failure to provide any "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation[,]" Rudometkin, 140 F.4th at 494 (quoting Flyers Rts. Educ. Fund, 71 F.4th at 1058), the Court concludes that the defendant met its burden of establishing that it complied with its segregability obligation for the records it released to the plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 8th day of September, 2026.[4]

REGGIE B. WALTON
United States District Judge

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.